# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

MARIAN J. LODGE and TROY LAMAR RENDON,

        Plaintiffs,

v.

BANK OF AMERICA,

        Defendant.

**Case No.** C07-5241JKA

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the court on cross motions for summary judgment. The court has considered all materials submitted in support and in response to each motion. Additionally, the court considers the arguments of counsel presented orally to the court on July 2, 2008. The parties acknowledge that there is no material issue of fact in dispute that would preclude the court disposing of the matter at this stage of the proceedings. Because the alleged actions and inactions of plaintiffs all relate to plaintiff Marian Lodge, references to "plaintiff" hereafter are with regard to the plaintiff Marian Lodge.

## UNDISPUTED FACTS:

1. On December 29, 1981, plaintiff Marian J. Lodge purchased a 30-month Market Rate Grobond from Seattle National Bank (defendant's predecessor in interest) in the sum of $3,268.82 in the name of Marion Rendon ITF (In Trust For) her then seven year old son, Troy Rendon. The certificate provided for 13.2% interest through its maturity date of June 29, 1984.

2. The bond contained the following provisions pertinent to this cause:

Order - 1

> AUTOMATIC RENEWAL. This First Bank Bond will be renewed for successive maturity periods unless (1) the funds on deposit are withdrawn at any maturity date or within ten days thereafter, or (2) the Bank at its option gives notice prior to any maturity date that it will not renew. The Bank will advise the registered owner by mail prior to each automatic renewal of the length of the maturity period and the rate of interest or the method of computing that rate applicable to that period.
>
> MAILING ADDRESS AND CORRESPONDENCE. Any notices or payments of principal or interest which the Bank mails to the registered owner will be mailed to the address shown on the records of the issuing Branch of the Bank. Any change of address or other correspondence concerning this First Bank Bond must be mailed to the issuing Branch

3. Both parties acknowledge that the bank sent plaintiff a Form 1099 for the calendar year 1984 showing interest paid in the sum of $290.33. This amount is consistent with interest at the rate of 13.2% for the last six months of the certificate (January through June 29, 1984). Neither party has any record of any other communication between the bank and the plaintiff until plaintiff presented the original of the "Market Rate Grobond" to an Arizona branch of Bank of America in 2005. If renewed pursuant to notice, the interest rate would have been adjusted to reflect the "market rate" for each successive period.

4. Plaintiff moved several times after purchasing the bond. She left forwarding addresses with the United States Post Office. She never notified the bank of her change(s) of address.

5. Plaintiff never received a Form 1099 after 1984 and never reported any interest on the investment on her income tax returns.

6. Pursuant to bank retention guidelines, supported by federal law (31CFR103.3A(d)), the bank destroys its records after a five-year period of non-activity. Thereafter, unclaimed funds escheat to the State of Washington pursuant to RCW. 63.29, as abandoned. Neither the bank nor the State of Washington has any record of plaintiffs' money being processed pursuant to RCW 63.29.

7. Plaintiff alleges that she never redeemed the certificate. She also alleges that she never received notices of renewal options/terms, and that she never received interest statements (other than the one 1984 Form 1099). The defendant bank can present no documentary evidence to the contrary. Plaintiff admits that she never reported income tax on the interest she claims to have been earning on the certificate over these many years.

Order - 2

## **DISCUSSION**

Plaintiff's contention that she never redeemed or attempted to redeem the certificate prior to 2005 is consistent with her possession of the certificate and the lack of any bank record to substantiate redemption. As both a practical and legal matter, there is little more a holder in plaintiff's position can do to support her claim of nonpayment other than present the original certificate and swear under oath that she had not earlier redeemed the certificate. In this instance, the lack of any record of escheat to the State of Washington as abandoned funds pursuant to RCW 63.29 is offered as rebuttal evidence. The court further understands that holders are able to redeem bonds or certificates without presenting the original, provided they comply with alternatives offered by the bank such as an affidavit of lost certificate or a security bond for a reasonable period of time. Defendant contends that plaintiff's contention of non-redemption is inconsistent with her lack of inquiry for over 20 years, failure to determine or report interest to the Internal Revenue Service, and failure to request 1099 Forms over the years (having received such a form for the calendar year 1984). It is relevant to the parties respective claims to note that all the Grobond has an automatic renewal provision, it does not state that the automatic renewal would carry the original interest rate. Read from its four corners, the holder knows that renewal periods will be subject to changed periods and interest rates.

Defendant's assertion of laches as a defense is somewhat negated by plaintiff's claim that she was unaware she had a claim until the moneys were denied her in 2005. It is meritorious, however, considered in light of the plaintiff's complete silence for such an extended period of time. The lack of inquiry for over 20 years, coupled with a duty to report the interest for income tax purposes, and failure to keep the defendant advised of her whereabouts, perpetuated today's dilemma.

Plaintiff contends that with interest compounded daily at 13.2% she is entitled to $101,142.78 through December 31, 2007, and interest thereafter at the rate 13.2% until paid. Defendant denies any liability on the basis that the Grobond was either redeemed in 1984 or abandoned. Alternatively, defendant computes the amount of interest commencing at the end date of the first 30-month period through December 31, 2006, as $12,811.76, utilizing the market rate.

## **CONCLUSION:**

Order - 3

It is undisputed that if the parties had acted in accordance with the terms of the Grobond as authored, the plaintiff would have received interest at the rate of 13.2% during the first 30-month period, and interest at the market rate thereafter. Although the bond provides that "while on deposit, interest will be earned at the rate stated above [13.2%]," nowhere is it contemplated that there will be an automatic renewal without an adjustment of the interest rate. To rule otherwise, would be to allow plaintiff to recover funds not contemplated by the terms of the Grobond by virtue of her inexplicable lack of interest and obligation for a protracted period of time.

ACCORDINGLY, the court finds that plaintiffs motion for summary judgment is denied to the extent plaintiff seeks interest on the Grobond at the rate of 13.2%. Defendant's motion for summary judgment *in the alternative* is granted. Plaintiffs are entitled to redeem their Market Rate Grobond # 00 737661 for the sum of $3268.82 together with interest at the rate of 13.2% through June 29, 1984, and daily compounded interest thereafter at the market rate, as would have been fixed by defendant if plaintiff received notice of the renewal option and interest rate for each successive period.

Dated this 22nd day of July 2008.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge

Order - 4